## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

SUN VALLEY ORCHARDS, LLC,

      Plaintiff,

    v.

U.S. DEPARTMENT OF LABOR, *et al.*,

      Defendants.

Case No. 1:21-cv-16625-JHR-MJS

## DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR
## MOTION TO DISMISS, OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL
## SUMMARY JUDGMENT, AND CROSS-MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

ARGUMENT........................................................................................................... 2

I.    The Department of Labor's adjudication does not violate Article III. ..................... 2

    A.    The Department of Labor is not exercising "judicial Power" at all. ............................................................................... 2

    B.    The Department of Labor is adjudicating only public rights that do not require an Article III tribunal. ........................................... 3

    C.    Sun Valley impliedly consented to the Labor Department's adjudication. ......................................................... 9

II.    Plaintiff's Appointments Clause and removal-power claims fail............................ 11

III.    The Department of Labor's adjudicatory system is authorized by the statute and Plaintiff is not entitled to a trial de novo. ............................................. 18

IV.    The Department of Labor's imposition of back pay and penalties is fully supported by the record and is neither arbitrary nor capricious. ........................... 21

V.    The Labor Department did not violate the Excessive Fines Clause. ...................... 24

CONCLUSION ...................................................................................................... 25

i

## TABLE OF AUTHORITIES

**CASES**

*Advanced Disposal Servs. E., Inc. v. NLRB,*
　　820 F.3d 592 (3d Cir. 2016) ............................................................................ 14

*Almaklani v. Trump,*
　　444 F. Supp. 3d 425 (E.D.N.Y. 2020) ............................................................ 24

*AMG Cap. Mgmt., LLC v. Fed. Trade Comm'n,*
　　141 S. Ct. 1341 (2021) .................................................................................... 23

*Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n,*
　　430 U.S. 442 (1977) ............................................................................. 5, 6, 8, 9

*Calcutt v. FDIC,*
　　--- F.4th ---, 2022 WL 2081430 (6th Cir. June 10, 2022) ................................. 14, 15, 17

*Carr v. Saul,*
　　141 S. Ct. 1352 (2021) .......................................................................... 10, 11, 12

*Cavallari v. Off. of Comptroller of Currency,*
　　57 F.3d 137 (2d Cir. 1995) ................................................................................ 6

*CFTC v. Schor,*
　　478 U.S. 833 (1986) ................................................................................. 4, 6, 8

*Chauffeurs, Teamster, & Helpers, Loc. 391 v. Terry,*
　　494 U.S. 558 (1990) ...................................................................................... 4, 5

*Cirko v. Comm'r of Soc. Sec.,*
　　948 F.3d 148 (3d Cir. 2020) .......................................................................... 12

*City of Ann Arbor v. U.S. Dep't of Lab.,*
　　733 F.2d 429 (6th Cir. 1984) ......................................................................... 22

*Collins v. Yellen,*
　　141 S. Ct. 1761 (2021) ............................................................................. 14, 15

*Dareth T. v. Kijakazi,*
　　2022 WL 671540 (C.D. Cal. Mar. 7, 2022) ................................................... 15

*David Stanley Consultants v. Director, Office of Workers' Compensation Programs,*
　　800 F. App'x 123 (3d Cir. 2020) ................................................................... 13

*Davis v. United States,*
   495 U.S. 472 (1990)..................................................................................... 24

*Decker Coal Co. v. Pehringer,*
   8 F.4th 1123 (9th Cir. 2021).............................................................*passim*

*Energy West Mining Co. v. Lyle,*
   929 F.3d 1202 (10th Cir. 2019)................................................................. 13

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
   561 U.S. 477 (2010)..................................................................................... 16

*Granfinanciera, S.A. v. Nordberg,*
   492 U.S. 33 (1989)............................................................................5, 6, 8, 9

*Hill v. SEC,*
   114 F. Supp. 3d 1297 (N.D. Ga. 2015)...................................................... 6

*Imperato v. SEC,*
   693 F. App'x 870 (11th Cir. 2017)............................................................. 6

*In re Collier,*
   2022 WL 874730 (S.D. Ill. Mar. 24, 2022) ............................................. 6

*In re Trib. Media Co.,*
   902 F.3d 384 (3d Cir. 2018) ...................................................9, 10, 11, 13

*Island Creek Coal Co. v. Bryan,*
   937 F.3d 738 (6th Cir. 2019) .................................................................... 13

*Jarkesy v. SEC,*
   34 F.4th 446 (5th Cir. 2022)...........................................................*passim*

*Joy Techs., Inc. v. Manbeck,*
   959 F.2d 226 (Fed. Cir. 1992) .................................................................... 6

*Lloyd Sabaudo Societa Anonima Per Azioni v. Elting,*
   287 U.S. 329 (1932).................................................................................... 7

*Lucia v. SEC,*
   138 S. Ct. 2044 (2018) ........................................................12, 13, 14, 15

*Michele T. v. Comm'r of Soc. Sec.,*
   --- F. Supp. 3d ---, 2021 WL 5356721 (W.D. Wash. Nov. 17, 2021)............. 15

*Morrison v. Olson,*
  487 U.S. 654 (1988)................................................................ 16, 17, 18

*Murray's Lessee v. Hoboken Land & Improvement Co.,*
  59 U.S. 272 (1855)...................................................................4, 5

*N. Pipeline Const. Co. v. Marathon Pipe Line Co.,*
  458 U.S. 50 (1982)..................................................................... 5

*New York v. United Parcel Serv., Inc.,*
  942 F.3d 554 (2d Cir. 2019) ...................................................... 24

*NVE, Inc. v. HHS,*
  436 F.3d 182 (3d Cir. 2006) ...................................................... 23

*Oceanic Steam Navigation Co. v. Stranahan,*
  214 U.S. 320 (1909).................................................................. 7

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC,*
  138 S. Ct. 1365 (2018) ..............................................................4, 6

*Richardson v. Tricom Pictures & Prods., Inc.,*
  334 F. Supp. 2d 1303 (S.D. Fla. 2004)........................................ 22

*Sasser v. EPA,*
  990 F.2d 127 (4th Cir. 1993) ..................................................... 6

*Seila Law LLC v. Consumer Fin. Prot. Bureau,*
  140 S. Ct. 2183 (2020) .............................................................17, 18

*Stern v. Marshall,*
  564 U.S. 462 (2011)............................................................. 3, 4, 7, 11

*Thomas v. Union Carbide Agric. Prod. Co.,*
  473 U.S. 568 (1985).................................................................4, 5, 8

*Tillman v. Lebanon Cnty. Corr. Facility,*
  221 F.3d 410 (3d Cir. 2000) ...................................................... 25

*Tull v. United States,*
  481 U.S. 412 (1987)..................................................................4, 5, 6

*U.S. ex rel. Drakeford v. Tuomey,*
  792 F.3d 364 (4th Cir. 2015) ..................................................... 25

*U.S. ex rel. Smith v. Gilbert Realty Co.*,
840 F. Supp. 71 (E.D. Mich. 1993)..................................................................... 24

*United States v. 3814 NW Thurman St., Portland, Or.*,
164 F.3d 1191 (9th Cir. 1999) .............................................................................. 24

*United States v. Arthrex, Inc.*,
141 S. Ct. 1970 (2021) ......................................................................................... 13

*United States v. Bajakajian*,
524 U.S. 321 (1998)......................................................................................24, 25

*United States v. Chaplin's, Inc.*,
646 F.3d 846 (11th Cir. 2011) .............................................................................. 25

*United States v. Cheeseman*,
600 F.3d 270 (3d Cir. 2010) ................................................................................. 25

*United States v. Fifty Nine Thousand Dollars ($59,000.00)*,
282 F. App'x 785 (11th Cir. 2008)........................................................................ 24

*United States v. Perkins*,
116 U.S. 483 (1886)........................................................................... 16, 17, 18

*United States v. Xuan*,
1993 WL 114335 (E.D. La. Apr. 1, 1993).............................................................. 6

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
435 U.S. 519 (1978).............................................................................................. 18

*Wellness Int'l Network, Ltd. v. Sharif*,
575 U.S. 665 (2015)..........................................................................................9, 10

*Yates v. Pinellas Hematology & Oncology, P.A.*,
21 F.4th 1288 (11th Cir. 2021) ............................................................................. 25

## CONSTITUTIONAL LAW

U.S. Const. art. III................................................................................................. 17

## STATUTES

5 U.S.C. § 301 ....................................................................................................... 18

5 U.S.C. § 706 ............................................................................................ 18, 21, 23

5 U.S.C. § 1202 .............................................................................................. 17

5 U.S.C. § 7521 .............................................................................................. 16

8 U.S.C. § 1188 ...........................................................................18, 22, 23, 24

15 U.S.C. § 53 ................................................................................................ 23

28 U.S.C. § 2461 .......................................................................................19, 20

28 U.S.C. § 3001 ............................................................................................ 20

## REGULATIONS

Secretary's Order 01-2020,
   85 Fed. Reg. 13,186 (Mar. 6, 2020) ........................................................ 22

## OTHER AUTHORITIES

Black's Law Dictionary (11th ed. 2019).......................................................... 22

Emily S. Bremer, *The Rediscovered Stages of Agency Adjudication*,
   99 Wash. Univ. L. Rev. 377 (2021) .......................................................... 19

Harvey J. Goldschmid, *An Evaluation of the Present and Potential Use of Civil Money Penalties as a Sanction By Federal Administrative Agencies*,
   2 Recommendations and Reports of the Administrative Conference of the United
   States 896 (1972)..............................................................................6, 20

## INTRODUCTION

While Sun Valley's violations of the H-2A program are straightforward, its legal arguments are not. Sun Valley primarily relies on inapposite Seventh Amendment case law for its constitutional claim that it is entitled to an Article III tribunal, despite the lack of any Seventh Amendment claim here. Pl.'s Reply in Supp. of Partial Summ. J. (Pl.'s Reply) at 5–8, ECF No. 23. Sun Valley asserts that it did not impliedly consent to agency adjudication, even though it requested an ALJ hearing and litigated before the agency for four years without objection. Pl.'s Reply at 14–15. Sun Valley says that the Labor Department's ALJs are "subject to significant political control" in violation of Article III, yet are not subject to *enough* political control in violation of Article II. Pl.'s Reply at 23. Sun Valley claims Defendants conceded a removal-power argument that Defendants, in fact, explicitly addressed. *Compare* Pl.'s Reply at 23 *with* Defs.' Mot. to Dismiss & Cross Mot. for Summ. J. (Defs.' Mot.) at 27 n.8, ECF No. 22. Sun Valley says it is entitled to a "trial de novo" under the APA, notwithstanding binding Supreme Court precedent that says otherwise. Pl.'s Reply at 19. Sun Valley claims the Secretary of Labor has no authority to assess back wages, even though he has been doing so for decades under his authority to "take such actions" as necessary "to assure employer compliance with" the H-2A program. Pl.'s Reply at 29. And Sun Valley cites the Fifth Circuit's holding that a provision of the Securities Exchange Act violates the nondelegation doctrine, even though Plaintiff doesn't advance a nondelegation claim at all. Pl.'s Notice of Suppl. Authority, ECF No. 24, at 2.

The Court should reject Plaintiff's legal shell game. Nearly all of Sun Valley's constitutional claims—based on Article II, Article III, and the Eighth Amendment—are resolved by on-point, binding case law that Sun Valley either ignores or misreads. Plaintiff's statutory arguments—seeking to eviscerate the broad authority Congress granted the Secretary to run the H-2A program—are similarly inconsistent with the plain statutory text and associated case law. And Sun Valley's arguments on the merits of its APA claim fare no better: the agency reasonably adjudicated Sun Valley's H-2A violations and reasonably explained its decision to

1

assess back wages and penalties due to the miserable conditions at, and misrepresentations by, Sun Valley during the 2015 growing season.  The Court should dismiss all these claims or grant summary judgment for Defendants.

## ARGUMENT

### I.      The Department of Labor's adjudication does not violate Article III.

#### A.      The Department of Labor is not exercising "judicial Power" at all.

Unlike federal judges, the Labor Department's ALJs do not issue binding judgments, so they are not unconstitutionally exercising "judicial Power."  Defs.' Mot. at 8–11.  Citing Supreme Court case law and persuasive commentary, Defendants explained that "judicial Power" is unique because its exercise not only binds the parties but cannot be revised by the Political Branches.  *Id.*  And because the ALJ's opinion here was subject to review by other executive officials and Congress, there was no improper exercise of "judicial Power."  *Id.*  Plaintiff doesn't engage with, much less dispute, any of Defendants' cited authorities, raising only three cursory points in response.  Pl.'s Reply at 8–10.  None are persuasive.

First, Sun Valley argues that "[i]f this theory were accepted, then agency adjudication would *never* violate Article III in any circumstance at all."  Pl.'s Reply at 8.  But that's obviously not true.  As Defendants already explained, "Congress's power to assign decisions to either the Executive or the Judiciary is, of course, subject to other constitutional restraints, including the Due Process Clause of the Fifth Amendment."  Defs.' Mot. at 10 n.3 (citing cases).  This also resolves Plaintiff's contention that the Court should not "immunize [ALJs'] role from constitutional challenge."  Pl.'s Reply at 9.  Again, nothing about ALJ conduct is immunized: their decisions can be reviewed by executive and legislative officials, and are subject to independent constitutional restraints, like the Due Process Clause.  Defs.' Mot. at 10 n.3 (citing cases).  And, of course, ALJ decisions can be subject to judicial review (as here) if Congress allows it.

Second, Plaintiff argues that Defendants do "not point to any meaningful distinction

2

between the agency decision here and an Article III judgment." Pl.'s Reply at 9. But Defendants cited extensive authorities explaining exactly this "meaningful distinction": the ALJ's decision can be reviewed and altered by other executive officials and Congress; Article III judgments cannot. *See* Defs.' Mot. at 8–11 (collecting authorities). Sun Valley does not dispute any of Defendants' cited authorities on that point.

Finally, Plaintiff argues that "all of the Supreme Court's other cases discussing the permissible scope of non-Article III adjudication" follow a different analysis. Pl.'s Reply at 9. But Defendants also cited numerous Supreme Court cases to support their analysis here. *See* Defs.' Mot. at 8–11. And there's no the reason the Court cannot resolve this issue based on those uncontested cases, with or without the usual public-rights analysis discussed below.

**B.    The Department of Labor is adjudicating only public rights that do not require an Article III tribunal.**

As Defendants explained, this case involves only public rights—"matters which aris[e] between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments"—not private rights—"the liability of one individual to another under the law as defined"—so it can be adjudicated outside Article III courts. *Stern v. Marshall*, 564 U.S. 462, 489 (2011); *see* Defs.' Mot. at 11–17. This government-enforcement action against Sun Valley based on a federal regulatory regime under the federal government's foreign-commerce and immigration-related powers is at the core of the public-rights doctrine. Defs.' Mot. at 13–17. A suit between the government and others involves only public rights. Defs.' Mot. at 12–13, 16. On top of that, this action based on Sun Valley's violation of Labor Department regulations "derives from a federal regulatory scheme," is "integrally related to particular Federal Government action," and involves "resolution of [a] claim by an expert Government agency [that] is deemed essential to a limited regulatory objective within the agency's authority."[1] *Stern*, 564 U.S. at

---

[1] Plaintiff oddly quibbles with this public-rights standard explicitly set forth in *Stern*, even though *Stern* was decided decades *after* the cases Sun Valley cites for support. *See* Pl.'s Reply at 12–15. Unsurprisingly, as discussed below, Plaintiff also misreads those cited cases.

3

490–91, 493; *see* Defs.' Mot. at 12–17.  In short, this case meets every test for public rights that the Supreme Court has articulated.

Plaintiff's contrary analysis goes awry from the start and continues down a legally unsupportable path.  Sun Valley cites the general rule that "Congress cannot 'withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty," and then simply cites Seventh Amendment cases *Tull* and *Chauffeurs* for the proposition that back pay and penalties historically involved suits at "common law," thus concluding that they involve private (not public) rights.  Pl.'s Reply at 5–8 (citing *Tull v. United States*, 481 U.S. 412 (1987) and *Chauffeurs, Teamster, & Helpers, Loc. 391 v. Terry*, 494 U.S. 558 (1990)).  But in *Stern*, the Supreme Court explained that although "Congress cannot 'withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty,'" at the same time "'there are matters, involving public rights, which . . . are susceptible of judicial determination, but which congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper.'"  *Stern*, 564 U.S. at 488–89 (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 284 (1855)); *contra* Pl.'s Reply at 5.  And what are those "public rights"?  The Supreme Court explained that too: "what makes a right 'public' rather than private is that the right is integrally related to particular Federal Government action."  *Stern*, 564 U.S. at 490–91.  So cases where the right to relief "flow[s] from a federal statutory scheme" or is "completely dependent upon adjudication of a claim created by federal law" are public rights, as are matters "that can be pursued only by grace of the other branches" or have historically been "determined exclusively by those branches."  *Id.* at 493 (citations and alterations omitted).  These criteria were derived from, and applied by, a long line of Supreme Court cases dating back to 1855.[2]  And only Defendants applied those criteria

---

[2] *See id.*; *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1373 (2018); *CFTC v. Schor*, 478 U.S. 833, 856 (1986); *Thomas v. Union Carbide Agric. Prod. Co.*, 473

here. *See* Defs.' Mot. at 11–17. Plaintiff, in contrast, cited only a tiny sliver of the Court's description and then proceeded down a completely separate path of Seventh Amendment precedents without engaging with the public-rights doctrine. *See* Pl.'s Reply at 5–8.

And those Seventh Amendment precedents refute Plaintiff's analysis. "The Seventh Amendment protects a litigant's right to a jury trial [in federal court] only if a cause of action is [1] legal in nature and [2] it involves a matter of 'private right.'" *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 n.4 (1989). "If a claim that is legal in nature asserts a 'public right,'" then "the Seventh Amendment does not entitle the parties to a jury trial [in federal court] if Congress assigns its adjudication to an administrative agency." *Id.* Both *Tull* and *Chauffeurs*, cited by Plaintiff, were cases filed in *federal court*, not government-enforcement actions adjudicated in agency proceedings. So the only Seventh Amendment analysis in those cases was whether they were "legal in nature," thus requiring a jury. *See Tull*, 481 U.S. at 414–15, 417; *Chauffeurs*, 494 U.S. at, 562, 564–68, 572. Those cases say nothing about whether a case involves public or private rights, which is governed by the same public-rights doctrine described above and omitted by Plaintiff. Defs.' Mot. at 15 n.5.

By conflating the first step of the Seventh Amendment analysis (whether a claim is legal in nature) with the second step (whether a claim involves public rights), Plaintiff directly contradicts the Supreme Court's long-established holding in *Atlas Roofing* that government-enforcement actions for penalties involve public rights: "the Government could commit the enforcement of statutes and the imposition and collection of fines to the judiciary, in which event jury trial would be required, but [ ] the United States could also validly opt for administrative enforcement, without judicial trials."[3] *Atlas Roofing v. Occupational Safety & Health*

---

U.S. 568, 584–85 (1985); *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 68 (1982) (plurality); *Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 458 (1977); *Murray's Lessee*, 59 U.S. (18 How.) at 284.

[3] Plaintiff's reliance on *Oil States* for the idea that a common-law-based "historical analysis should be controlling" is bizarre. Pl.'s Reply at 7. The Court in *Oil States* reaffirmed the

5

*Rev. Comm'n*, 430 U.S. 442, 460 (1977) (citations omitted); *Granfinanciera*, 492 U.S. at 51; *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1379 (2018).  Indeed, "Congress has often created new statutory obligations, provided for civil penalties for their violation, and committed exclusively to an administrative agency the function of deciding whether a violation has in fact occurred." *Atlas Roofing*, 430 U.S. at 450.  The Court in *Tull* itself recognized as much. *Tull*, 481 U.S. at 418 n.4 (noting prior decisions "holding that the Seventh Amendment is not applicable to administrative proceedings").  And lower courts have held for decades that government-enforcement actions (including those for penalties) involve "public rights" that can be adjudicated in agency proceedings.[4]  Even Plaintiff's own cited article long ago explained that "[i]n a variety of settings, over a period of many years, administrative imposition [of civil penalties] has been consistently upheld in the federal courts," and any "constitutional doubts" about administrative imposition of civil penalties "are based on vague and no longer plausible suppositions."  Pl.'s Reply at 18 n.14 (citing Harvey J. Goldschmid, *An Evaluation of the Present and Potential Use of Civil Money Penalties as a Sanction By Federal Administrative Agencies*, 2 Recommendations and Reports of the Administrative Conference of the United States 896, 936 (1972), *available* here).

Plaintiff never identified a single case to the contrary until their Notice of Supplemental Authority, citing *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022).  There, the Fifth Circuit

---

opposite: "[h]istorical practice is not decisive" because "matters governed by the public-rights doctrine 'from their nature' can be resolved in multiple ways: Congress can 'reserve to itself the power to decide,' 'delegate that power to executive officers,' or 'commit it to judicial tribunals.'" *Oil States*, 138 S. Ct. at 1378 (citation omitted).  If Plaintiff were correct, cases like *Schor*—which upheld an agency's ability to adjudicate "a narrow class of common law claims" as a public right—would have come out the other way.  *See Schor*, 478 U.S. at 854.  Regardless, Plaintiff's "historical analysis" is flawed for the reasons Defendants explain.

[4] *See e.g.*, *Imperato v. SEC*, 693 F. App'x 870, 876 (11th Cir. 2017); *Cavallari v. Off. of Comptroller of Currency*, 57 F.3d 137, 145 (2d Cir. 1995); *Sasser v. EPA*, 990 F.2d 127, 130 (4th Cir. 1993); *Joy Techs., Inc. v. Manbeck*, 959 F.2d 226, 229 (Fed. Cir. 1992); *In re Collier*, 2022 WL 874730, at *3 (S.D. Ill. Mar. 24, 2022); *Hill v. SEC*, 114 F. Supp. 3d 1297, 1315 (N.D. Ga. 2015), *vacated and remanded on other grounds*, 825 F.3d 1236 (11th Cir. 2016); *United States v. Xuan*, 1993 WL 114335, at *1 (E.D. La. Apr. 1, 1993).

held that securities-fraud enforcement actions by the SEC involve private rights because, among other reasons, "[c]ommon-law courts have heard fraud actions for centuries," and securities-fraud claims "and civil penalties are analogous to traditional fraud claims at common law" rather than "matters that could be conclusively determined by the Executive and Legislative Branches[.]" *Id.* at 455–58 (citations omitted). To the extent *Jarkesy* (which is not binding on this Court) eschewed *Oil States*, *Stern*, and the relevant public-rights analysis discussed above, it was wrong for the same reasons. *See id.* at 466–73 (Davis, J., dissenting).[5] More to the point, though, *Jarkesy*'s rationale does not apply here.

As Defendants previously explained, Sun Valley was able to hire foreign agricultural workers only "by grace of the other branches" because the federal government has total control over foreign commerce and immigration. Defs.' Mot. at 13–15 (quoting *Stern*, 564 U.S. at 493 and collecting cases). It need not allow employers to hire foreign agricultural workers *at all*, but has chosen to do so by "impos[ing] appropriate obligations, sanction[ing] their enforcement by reasonable money penalties, and invest[ing] in administrative officials the power to impose and enforce them." *Id.* (quoting *Lloyd Sabaudo Societa Anonima Per Azioni v. Elting*, 287 U.S. 329, 334 (1932) and *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909)).[6] So, unlike the securities-fraud claims in *Jarkesy*, this is a matter "that could be conclusively determined by the Executive and Legislative Branches[.]" *Jarkesy*, 34 F.4th at 458.

Plaintiff and *Jarkesy* are also wrong in arguing that it takes more than the government enforcing a statute or regulation to qualify as a public right. Pl.'s Reply at 10–11; *Jarkesy*, 34 F.4th at 458-59. Other than *Jarkesy* itself, neither Plaintiff nor the Fifth Circuit cite any case—

---

[5] *Jarkesy* is not yet final because the government's time to file a petition for rehearing or certiorari has not expired.

[6] Plaintiff tries in vain to distinguish *Lloyd Sabaudo* and *Oceanic Steam*, both of which involved a statute that mandated fines if a company brought certain afflicted aliens to the United States and broadly upheld the Secretary of Labor's ability to impose those fines outside Article III courts. *See Lloyd Sabaudo*, 287 U.S. at 331–32, 333–35; *Oceanic Steam*, 214 U.S. at 330–32, 335. Neither case concerned, as Plaintiff contends, executive officials "condition[ing] the receipt of a federal benefit on a monetary payment." Pl.'s Reply at 14 n.10.

and Defendants are aware of none—where a government-enforcement action was found to involve a private right. That's because, at its core, public rights are not "rights important to the public, or rights created by the public, but rights *of the public*—that is, rights pertaining to claims brought by or against the United States." *Granfinanciera*, 492 U.S. at 68 (1989) (Scalia, J. concurring); *id.* at 65–66 (collecting cases). The Court has even said in no uncertain terms that "Congress may effectively supplant a common-law cause of action carrying with it a right to a jury trial with a statutory cause of action shorn of a jury trial right if that statutory cause of action *inheres in, or lies against, the Federal Government in its sovereign capacity*." *Id.* at 53 (emphasis added); *Jarkesy*, 34 F.4th at 470 (Davis, J., dissenting) ("*Granfinanciera*'s recognition that the public-rights doctrine can extend to cases where the Government is not a party in no way undermines or alters *Atlas Roofing*'s holding that a case where the Government sues in its sovereign capacity to enforce a statutory right is a case involving 'public rights.'"). It was only in applying the public-rights doctrine "in cases *not* involving the Federal Government" that the Court considered whether a particular claim was "so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution." *Granfinanciera*, 492 U.S. at 54 (emphasis added). Ironically, Plaintiff's sole response is to cite cases involving claims between *private parties* that were *also* found to be public rights, only proving Defendants' point. *Compare* Pl.'s Reply at 10–11 (citing *Thomas* and *Oil States*) *with* Defs.' Mot. at 13 (describing how *Thomas*, *Schor*, and *Oil States* apply the public-rights doctrine beyond its core to claims between private parties adjudicated by an agency).

Plaintiff finds no refuge in attempting to reframe the government's claims as "trying to enforce a contract between Sun Valley and H-2A workers." Pl.'s Reply at 13 n.9; *see id.* at 4, 6, 8, 11. Again, "the government's enforcement action here was based on Sun Valley's violation of Labor Department regulations—not some state-law breach-of-contract theory— which makes this case just like every other regulatory-based enforcement action that is adjudicated outside Article III." Defs.' Mot. at 16. As in *Atlas Roofing*, it would not be possible for the Secretary to seek the penalties at issue here absent the statutory scheme that created

8

the H-2A program.  *See Atlas Roofing*, 430 U.S. at 455.  It also wouldn't matter even if these claims *were* similar to state-law breach-of-contract claims.  "Congress may fashion causes of action that are closely *analogous* to common-law claims and place them beyond the ambit of" federal courts and the Seventh Amendment.  *Granfinanciera*, 492 U.S. at 52.  And, as noted above, Congress can fully replace a common-law cause of action with a statutory cause of action as long as it "inheres in, or lies against, the Federal Government in its sovereign capacity."  *Id.* at 53.  Again, this would be a much closer case if the Labor Department had adjudicated a state-law contract claim between Sun Valley and its former H-2A employees.  Defs.' Mot. at 16.  But that's not remotely what we have here.

There's a reason no case until (arguably) *Jarkesy* even attempted to apply out-of-context Seventh Amendment cases under the public-rights framework.  And even *Jarkesy* did not do so in the context of the federal government's power to regulate foreign commerce and immigration.  Plaintiff's spin that its "historical approach imposes only modest limitations on the scope of agency adjudication" rings hollow.  Pl.'s Reply at 7.  Put simply, Plaintiff's analysis would upend almost 170 years of Supreme Court case law, decades of H-2A enforcement, and at least a century of other statutes that have allowed various agencies to impose civil penalties in agency adjudications.  This Court should reject Plaintiff's Article III challenge.

### C.    Sun Valley impliedly consented to the Labor Department's adjudication.

Even if the Court were to break new ground and hold that the Labor Department's adjudication against Sun Valley ran afoul of Article III, Plaintiff's Article III claim should still be dismissed because Sun Valley consented to executive adjudication.  Defs.' Mot. at 17–18.  As Defendants explained, Supreme Court and Third Circuit law dictate that consent to a non-Article III tribunal "may be express or implied."  *In re Trib. Media Co.*, 902 F.3d 384, 394 (3d Cir. 2018) (quoting *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 684–85 (2015)).  Because a party "may impliedly consent through [its] actions rather than [its] words," and because Sun Valley litigated through the Labor Department for four years without objection, Plaintiff impliedly consented to non-Article III adjudication.  Defs.' Mot. at 18 (quoting *id.*)

Ignoring these controlling precedents, Sun Valley argues that it "did not 'consent' to adjudication before the DOL's agency judges because it did not affirmatively request relief from the Agency and did not forego an alternative forum." Pl.'s Reply at 14–15. This misstates both the law and the facts. Consent does not require foregoing an alternative forum. Neither the Supreme Court's decision in *Wellness International* nor the Third Circuit's decision in *Tribune Media*—which allowed implied consent to bankruptcy-court adjudication—mentioned, let alone required, an alternative forum. *See Wellness Int'l*, 575 U.S. at 684; *Trib. Media*, 902 F.3d at 394–96. Quite the opposite: the Supreme Court held that implied consent "supplies the appropriate rule for adjudications by bankruptcy courts" over Chief Justice Roberts's dissent, which pointed out that "creditors *lack an alternative forum* to the bankruptcy court in which to pursue their claims." *Compare Wellness Int'l*, 575 U.S. at 684 *with id.* at 699–700 (Roberts, C.J., dissenting) (emphasis added; citation omitted). So even if there were no alternative forum for Sun Valley, it could still consent to the Labor Department's adjudication.

The critical point is that a party "may impliedly consent through [its] actions rather than [its] words," including by "appearing before the [non-Article III tribunal] without any objection." *Trib. Media*, 902 F.3d at 394–95 (alterations omitted) (quoting *Wellness Int'l*, 575 U.S. at 684 and collecting cases). And not only did Sun Valley appear before the agency without objection, but its actions even meet the higher standard that it (incorrectly) argues should apply here: Sun Valley "affirmatively request[ed] relief from the Agency." Pl.'s Reply at 15. After the Labor Department originally notified Plaintiff of its H-2A violations in 2016, Sun Valley timely requested "an evidentiary hearing before an Administrative Law Judge." AR 0011. And Sun Valley never once objected to the agency's non-Article III status in the next four years, instead seeking relief through agency adjudication at every turn.[7] *See, e.g., id.* (Sun Valley requesting ALJ hearing); AR 4298 (Sun Valley post-hearing brief asking that the

---

[7] While "consent" is the correct analysis under Supreme Court and Third Circuit law, Plaintiff also loses under an "exhaustion" analysis for the same reasons discussed below: it failed to raise this constitutional claim in the agency's adversarial proceedings. *See* Section II.A., *infra*; *Carr v. Saul*, 141 S. Ct. 1352, 1358 (2021); *contra* Pl.'s Reply at 14–15 n.11.

10

ALJ "enter judgment in its favor on all charges"); AR 4408 (Sun Valley petitioning the Review Board "to reverse the ALJ's Decision and rescind" the imposed penalties).

Just as the party in *Tribune Media* impliedly consented to bankruptcy adjudication by "fil[ing] a proof of claim" and several responses without "question[ing] the Bankruptcy Court's constitutional authority to decide his claims," *Trib. Media*, 902 F.3d at 395–96, Sun Valley likewise impliedly consented to the Labor Department's adjudication by invoking its procedures and submitting brief after brief without questioning its constitutional authority. To hold otherwise would only reward Plaintiff's attempt to "sandbag[]" the court by "remaining silent about his objection and belatedly raising the error only if the case does not conclude in [its] favor." *Id.* at 395 (quoting *Stern*, 564 U.S. at 482).

## II.     Plaintiff's Appointments Clause and removal-power claims fail.

There is no dispute that Sun Valley did not raise its Appointments Clause and removal claims in its four years of agency proceedings, and there is no dispute that those agency proceedings were adversarial. *Compare* Defs.' Mot. at 20 *with* Pl.'s Reply at 25. The only remaining question is whether Sun Valley was required to raise its Article II claims in those adversarial proceedings before this Court can decide them. Defs.' Mot. at 19–21. And the Supreme Court's decision in *Carr* gives the straightforward answer: yes. Where, as here, "statutes and regulations are silent," courts decide "whether to require issue exhaustion based on an analogy to the rule that appellate courts will not consider arguments not raised before trial courts," which requires the Court to examine "the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding." *Carr v. Saul*, 141 S. Ct. 1352, 1358 (2021) (citation omitted). And with no dispute as to the adversarial nature of the Labor Department's proceedings—resembling federal civil litigation in every meaningful way—Sun Valley was required to raise its Article II claims with the agency first. It did not.

Plaintiff attempts to obscure this clear-cut outcome by ignoring the controlling standard set by *Carr* and instead relying on "additional considerations"—like the nature of the claims or futility—the Supreme Court used in determining whether the "specific context" of

11

the challenges in *Carr* "tip the scales" against imposing an issue-exhaustion requirement. Pl.'s Reply at 25; *Carr*, 141 S. Ct. at 1360. But the Supreme Court only examined those "additional considerations" because it was unclear whether the "ALJ proceedings at issue [in *Carr*] were adversarial enough" to impose such a requirement. *Carr*, 141 S. Ct. at 1360. Here, in contrast, there is no need to examine those "additional considerations" because everyone agrees that the Labor Department's proceedings were plainly adversarial.[8] *See* Defs.' Mot. at 21 n.7; *Carr*, 141 S. Ct. at 1360; *id.* at 1363 (Thomas, Gorsuch, Barrett, JJ., concurring) (finding that because Social Security "proceedings bear little resemblance to adversarial litigation," the analysis ends there). Because Plaintiff failed to raise its Appointments Clause and removal objections in the agency's adversarial proceedings, those claims should be deemed forfeited and the Court should dismiss them. Compl. ¶¶ 118–27.

In the same vein, Plaintiff is not entitled to relief on its Appointments Clause claim. *See* Defs.' Mot. at 21–25; *contra* Pl.'s Reply at 20. Appointments Clause remedies are designed to incentivize timely Appointments Clause challenges by rewarding those who bring such timely and meritorious claims. *Lucia v. SEC*, 138 S. Ct. 2044, 2055 & n.5 (2018). That's why the challenger in *Lucia* was awarded "a new hearing before a properly appointed official" where he "made just such a timely challenge" before the agency and the improperly appointed ALJ had both "heard [his] case and issued an initial decision on the merits." *Id.*

But nearly the opposite is true here: the agency proactively ratified Judge Timlin's appointment almost two years *before* she decided Sun Valley's case—while *Lucia*, a high-profile Appointments Clause case, was pending in the Supreme Court—and Plaintiff sill never raised an Appointments Clause objection during the ALJ proceedings. After the ALJ issued her

---

[8] The Third Circuit's decision in *Cirko* is irrelevant because it was superseded by the Supreme Court's decision in *Carr*, which specifically "granted certiorari to resolve th[e] conflict" between the Circuits on this issue. Pl.'s Mot. at 25; *Carr*, 141 S.Ct. at 1357 (citing *Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 152 (3d Cir. 2020)).

decision, Sun Valley also had an opportunity to raise an Appointments Clause challenge before the Review Board, as other litigants in similar Labor Department proceedings have done. *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1128 (9th Cir. 2021). But Sun Valley didn't do that either. As the Third Circuit has explained in similar circumstances, "a petitioner forfeits an Appointments Clause challenge if it fails to properly raise the challenge" in Labor Department proceedings. *David Stanley Consultants v. Director, Office of Workers' Compensation Programs*, 800 F. App'x 123, 127 (3d Cir. 2020) (citing *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 751 (6th Cir. 2019); *Energy West Mining Co. v. Lyle*, 929 F.3d 1202, 1206 (10th Cir. 2019). So unlike *Lucia*, Sun Valley did not raise a "timely" Appointments Clause challenge with the agency, nor did an improperly appointed ALJ "decide[]" the case. *Lucia*, 138 S. Ct. at 2055 (emphasis added).[9] To award Plaintiff with a "new hearing" now would flip *Lucia* on its head, allowing Sun Valley to "sandbag[]" the court by "remaining silent about" its Appointments Clause objection "and belatedly raising the error only if the case does not conclude in [its] favor." *Cf. Trib. Media*, 902 F.3d at 394 (citations omitted).

This unfairness is magnified here because, without any objection from Sun Valley, Judge Timlin ratified all prior proceedings by deciding the case *after* the Secretary properly ratified her appointment. *See United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1980 (2021) (recognizing in a similar context that "the one thing that makes" administrative judges "officers exercising 'significant authority' in the first place" is "their power to issue decisions" (citation omitted)). Defendants previously explained how, under binding Third Circuit law, Judge Timlin's decision met all three factors for implied ratification. Defs.' Mot. at 22–23.

---

[9] To the extent Plaintiff is challenging only the ALJ's decision and not anything in the ALJ's hearing, the rationale underlying *Lucia*'s remedy—that "the old judge would have no reason to think he did anything wrong *on the merits*, and so would be expected to reach all the same *judgments*"—does not apply because Judge Timlin never reached "the merits" or a "judgment" while she was improperly appointed. *Id.* at 2055 n.5 (emphasis added). Similarly, the Ninth Circuit's main concern in *Decker Coal*, was that the ALJ "was properly appointed when he *adjudicated* [the] claim *on the merits*." *Decker Coal*, 8 F.4th at 1137 (emphasis added). So Plaintiff's emphasis on the ALJ's "significant action" is misplaced. *See* Pl.'s Reply at 21.

13

In response, Plaintiff does not engage with that analysis, raising only two meager coun-ters. First, Plaintiff says that self-ratification is "inconsistent with *Lucia*." Pl.'s Reply at 21–22. But, as discussed above, *Lucia* involved a timely objection to the ALJ's appointment where the ALJ had adjudicated the merits of the case. *Lucia*, 138 S. Ct. at 2055. Nothing in *Lucia* mandates a new hearing and decision if there was an unchallenged improper appoint-ment at any point in the proceedings. Second, Plaintiff protests that Judge Timlin "did not take any action to expressly ratify any of her prior actions after she was reappointed." Pl.'s Reply at 21. But that contradicts Third Circuit law: ratification need not be express; it "can be implied from subsequent conduct, such as when a later act is necessarily an affirmation of an earlier act." *Advanced Disposal Servs. E., Inc. v. NLRB*, 820 F.3d 592, 603 (3d Cir. 2016). This was true in *Advanced Disposal* itself, which dealt with a "blanket affirmation, without any specific mention of th[e] case or the details of any ratification process." *Id.* at 605; *contra* Pl.'s Reply at 22 n.16. And as in *Advanced Disposal*, Judge Timlin's ultimate decision was "neces-sarily an affirmation of the validity of h[er] earlier actions in conducting the" case. *Advanced Disposal*, 820 F.3d at 605. Plaintiff does not argue otherwise. Its Appointments Clause claim should be dismissed.

Plaintiff's removal challenge likewise fails because it has not shown any harm caused by the ALJ's removal protections. Defs.' Mot. at 25–26; *Decker Coal*, 8 F.4th at 1137; *Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021). Plaintiff's attempt to avoid this conclusion is fruitless.

Sun Valley first misreads the Supreme Court's decision in *Collins* by arguing that the challenged decision there "could be overseen by supervisory officials within the executive branch in real time, notwithstanding the director's removal protections." Pl.'s Reply at 24. But nothing in *Collins* turned on that distinction, and none of the cases applying *Collins* do either. *See* Defs.' Mot. at 25; *Calcutt v. FDIC*, --- F.4th ---, 2022 WL 2081430, at *14 (6th Cir. June 10, 2022) ("*Collins* thus provides a clear instruction: To invalidate an agency action due to a removal violation, that constitutional infirmity must 'cause harm' to the challenging party."). The Supreme Court simply held that "there is no reason to regard any of the actions

taken by the" agency "as void" if the official in question was "properly appointed," and it distinguished other cases on the grounds that they "involved a Government actor's exercise of power that the actor did not lawfully possess." *Collins*, 141 S. Ct. at 1787–88.  In so holding, the Supreme Court even expressly rejected the vacatur remedy in *Lucia*, the only case Plaintiff cites in support of its argument here.  *Compare id.* at 1788 *with* Pl.'s Reply at 24 (citing *Lucia*, 138 S. Ct. at 2056).  And regardless, Judge Timlin's decision was "overseen by supervisory officials within the executive branch in real time": the Review Board, the Secretary of Labor, and the President.  *See* Defs.' Mot. at 11, 20, 24, 26–29.  So even under Plaintiff's misreading of *Collins*, there is no reason to vacate the decision here.

Sun Valley also tries to spin its routine agency adjudication as harm itself, contending that it was "plainly harmed" by the ALJ's "numerous decisions, factual findings, and credibility determinations that affected Sun Valley's rights in large and small ways."  Pl.'s Reply at 24.  But the key is that Sun Valley must be harmed by the supposedly improper *removal restrictions*, not the agency's decision.  *Calcutt*, 2022 WL 2081430, at \*14 ("*Collins* does not say that *any* administrative penalty imposed by an unconstitutionally-structured agency must be vacated.  Instead, the constitutional violation must have *caused* the harm."); *Decker Coal*, 8 F.4th at 1137.  Here, Plaintiff still "identifies no particular harm suffered by virtue of [its] claim being adjudicated . . . by an ALJ who was otherwise properly appointed" and Sun Valley "has failed to show any connection between the unconstitutional removal clause and the ALJ's decision."  *Dareth T. v. Kijakazi*, 2022 WL 671540 (C.D. Cal. Mar. 7, 2022) (collecting cases).  Nor is there any indication that the President or the Secretary of Labor would have removed Judge Timlin "and appointed a new [ALJ] who would have administered this plaintiff's claims differently."  *Michele T. v. Comm'r of Soc. Sec.*, --- F. Supp. 3d ---, 2021 WL 5356721, at \*5 (W.D. Wash. Nov. 17, 2021); *Collins*, 141 S. Ct. at 1789; *Calcutt*, 2022 WL 2081430, at \*14.  So the lack of any Appointments Clause problem resolves any purported removal problem, and the Court should reject the "catastrophic effects" of holding otherwise.  *Decker Coal*, 8 F.4th at 1137.

But even if the Court reaches the merits of Plaintiff's removal-power claim, it fails. Far from "conced[ing] that ALJs enjoy precisely the type of multi-layered good cause removal that *Free Enterprise Fund* forbids," Pl.'s Reply at 23, Defendants explained with supporting authorities that there is no removal problem because "[i]t [i]s the President—or a subordinate he c[an] remove at will—who decide[s] whether the officer's conduct merit[s] removal under the good-cause standard," Defs.' Mot. at 26–27 (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 495 (2010)). In fact, Defendants already rebutted the exact argument Plaintiff says Defendants conceded. Defs.' Mot. at 27 n.8. In *Free Enterprise Fund*, the Supreme Court held unconstitutional a statutory scheme where certain inferior officers could be removed only for specified instances of willful misconduct by principal officers that were themselves removable by the President only for "inefficiency, neglect of duty, or malfeasance in office." *Free Enter. Fund*, 561 U.S. at 496; *Decker Coal*, 8 F.4th at 1132 ("*Free Enterprise Fund* did not address the issue [of Labor Department ALJs] and its limited holding does not reach § 7521."). Here, in contrast, the Secretary—who may remove ALJs for good cause—is "subject to the President's direct control."[10] *Free Enter. Fund*, 561 U.S. at 495.

As Defendants further explained, it makes no difference that the Secretary's decision to remove an ALJ is subject to review by the Merit Systems Protection Board. Defs.' Mot. at 27–28. It is "the agency in which the administrative law judge is employed" that initiates removal of an ALJ for good cause; the Board is simply there to make sure that the agency properly invoked and substantiated "good cause" for removal. Defs.' Mot. at 27 (quoting 5 U.S.C. § 7521(a)); Pl.'s Mem. in Supp. of Partial Summ. J. (Pl.'s Mot.) at 30, ECF No. 19-1; Pl.'s Reply at 23. This statutory scheme allows the President as much, if not more, control

---

[10] For this reason, the Fifth Circuit's decision in *Jarkesy* does not "apply with equal force to DOL's ALJs here." *Contra* Pl.'s Notice of Suppl. Authority at 2. There, unlike here, the principal officers (SEC Commissioners) responsible for removing SEC ALJs were removable by the President only for cause. *Jarkesy*, 34 F.4th at 463–64. The vigorous and well-reasoned dissent also explains why the majority was wrong on its own terms, highlighting the Ninth Circuit's decision in *Decker Coal* upholding removal restrictions for Labor Department ALJs. *Id.* at 478 (Davis, J., dissenting).

over removal than the schemes upheld by the Supreme Court in *Morrison* and *Perkins*.  In both cases, the decision to remove an inferior officer protected from at-will removal was reviewable in an Article III court, whose judges enjoy life tenure during "good Behavior." *Morrison v. Olson*, 487 U.S. 654, 663–64, 686–93 (1988); *United States v. Perkins*, 116 U.S. 483, 483-85 (1886); U.S. Const. art. III, § 1.  Here, the Secretary's decision to remove an ALJ for good cause is subject to review by the Merit Systems Protection Board, whose members the President can remove "for inefficiency, neglect of duty, or malfeasance in office."  *See* 5 U.S.C. § 1202(d).  Plaintiff's failure to address those cases is striking, especially because its only rebuttal is that the "MSPB can order the Secretary to retain an ALJ whom the Secretary wishes to remove."  Pl.'s Reply at 23.  But that was true in *Morrison*, where a federal judge was empowered to order "reinstatement or other appropriate relief."  *Morrison*, 487 U.S. at 664 & n.8. So nothing about Merit Systems Protection Board review transforms this into an impermissible removal scheme.

Plaintiff's other arguments are similarly deficient.  Sun Valley has no response to Defendants' point that Labor Department ALJs have only adjudicatory functions; they do not set agency-wide rules and "cannot sua sponte initiate investigations or commence a [H-2A] case." *Decker Coal*, 8 F.4th at 1133; *Calcutt*, 2022 WL 2081430, at *16; *see* Defs.' Mot. at 28. So the Supreme Court's removal precedents apply with lesser force to Labor Department ALJs.  *See* Defs.' Mot. at 28 (collecting authorities).  Defendants also argued that there is no removal-power issue because "[t]he President has broad executive power to order the Secretary of Labor to change [the Labor Department]'s regulatory scheme and remove ALJs from the adjudicatory process."  Defs.' Mot. at 29 (quoting *Decker Coal*, 8 F.4th at 1134).  That is exactly what the Ninth Circuit held in upholding the removal restrictions on Labor Department ALJs.  *Id.*  Plaintiff does not address the Ninth Circuit's extensive analysis, instead resting on its assertion that the President has "'unrestricted' removal power, which [i]s subject to 'only two exceptions.'"  Pl.'s Reply at 24.  But one of those "exceptions" is that removal restrictions are allowable for "inferior officers with limited duties and no policymaking or

17

administrative authority." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2199–2200 (2020). And because Labor Department ALJs are exactly such inferior officers, both the Ninth Circuit's holding and all of Defendants' removal arguments fall within this exception. *See Decker Coal*, 8 F.4th at 1133–36; Defs.' Mot. at 26–29. So Plaintiff's observation that "Defendants do not address those [removal] exceptions" is puzzling. *Compare* Pl.'s Reply at 24 & n.18 (citing *Perkins* and *Morrison* as the basis for one exception) *with* Defs.' Mot. at 26–29 (citing *Perkins*, *Morrison*, *Myers* and many other cases unaddressed by Plaintiff). Plaintiff's removal-power claim is meritless.

III.   **The Department of Labor's adjudicatory system is authorized by the statute and Plaintiff is not entitled to a trial de novo.**

Everyone agrees that the "[t]he Secretary of Labor is authorized to take such actions, including imposing appropriate penalties and seeking appropriate injunctive relief and specific performance of contractual obligations, as may be necessary to assure employer compliance with terms and conditions of employment under" the H-2A program. 8 U.S.C. § 1188(g)(2); Defs.' Mot. at 29–30; Compl. ¶ 136. Under this provision, the Secretary could impose back wages and penalties alone, but has instead chosen to "prescribe regulations for the government of his department" and "the distribution and performance of its business" by allowing H-2A violators like Sun Valley to challenge these assessments through an adjudicatory process where ALJs can consider testimony and evidence.[11] 5 U.S.C. § 301; Defs.' Mot. at 30. After all, "[a]gencies are free to grant additional procedural rights in the exercise of their discretion" and "the formulation of procedures [i]s basically to be left within the discretion of the agencies to which Congress had confided the responsibility for substantive judgments."

---

[11] Far from being "a stunning assertion of power," Pl.'s Reply at 17, if the Secretary scrapped the long-established H-2A adjudicatory system and assessed penalties himself (as Plaintiff's statutory theory would dictate), his decisions would still be subject to potential APA challenge in the same way Plaintiff has done here. *See* 5 U.S.C. § 706(2). Plaintiff nowhere addresses the Secretary's authority, under 5 U.S.C. § 301, to execute his duties by establishing an adjudicatory system, and Plaintiff cites no case holding that the Secretary of Labor—or any other agency head with similar authority—cannot assess penalties through such a system.

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978).

Defendants further explained—by analyzing the statutory text through numerous cases and legislative history—that the Secretary is not required to recover any penalties in court under 28 U.S.C. § 2461, which specifies only that civil fines and penalties "*may*" (not must) "be recovered in a civil action." 28 U.S.C. § 2461(a) (emphasis added); *see* Defs.' Mot. at 30–32. Defendants also cited numerous APA cases explaining that *informal* agency adjudications, like Sun Valley's here, are reviewed under the familiar arbitrary-or-capricious standard, so Plaintiff is not entitled to an extremely rare "trial de novo." *See* Defs.' Mot. at 32–34 & n.10. Plaintiff's fourth claim, in short, fundamentally misunderstands both the governing statutes and APA review. Compl. ¶¶ 135–42.

Bypassing all of Defendants' cited authorities and citing none if its own, Plaintiff baldly asserts that "28 U.S.C. § 2461(a) sets out the clear background rule, which is that, unless Congress states otherwise, penalties should be collected 'in a civil action' in the Article III courts." Pl.'s Reply at 17–18. Sun Valley's argument is that this statute says "may" rather than "must" because "an agency always has the option not to collect penalties at all." *Id.* at 18. This is wrong. Before 28 U.S.C. § 2461 was enacted in 1948, "[n]umerous sections in the United States Code prescribe[d] civil fines, penalties, and pecuniary forfeitures for violation of certain sections without specifying the mode of recovery or enforcement thereof." 28 U.S.C. § 2461, Historical and Revision Notes, available here; Defs.' Mot. at 31–32. So before § 2461 was enacted in 1948, there was a "serious ambiguity" as to whether agencies could seek penalties in court *aside from* recovering them in agency proceedings. *Id.* Indeed, even before the APA was enacted in 1946, agencies would routinely enforce their statutory regimes (including monetary penalties) through informal agency adjudication—like "investigations, examinations, correspondence, conferences, mediation, negotiation, and settlements"—and, failing that, through formal agency adjudication with agency hearings subject to "internal review" and "appeal to the agency head for error correction, policy control, and final decision." Emily S. Bremer, *The Rediscovered Stages of Agency Adjudication*, 99 Wash.

19

Univ. L. Rev. 377, 402–03, 414 (2021). This was true in the Labor Department specifically, which enforced "minimum wage and overtime requirements and child labor prohibitions" through informal and formal agency adjudications long before the APA and § 2461. *Id.* at 408–09.

Against this background,[12] Congress enacted 28 U.S.C. § 2461 to clarify that agencies are *allowed* to bring civil actions in court if other statutes are ambiguous, not to *mandate* that agencies must recover fines and penalties *only* in civil actions. Defs.' Mot. at 30–32. Nothing about § 2461 altered agencies' preexisting authority to recover penalties through their own proceedings. This is evident from the undisputed text of § 2461(a): in contrast to other sections of the same statute, it uses "may" rather than "must" or "shall" to confer agency discretion. Defs.' Mot. at 31 (collecting cases unaddressed by Plaintiff). Again, if Congress wanted to mandate that penalties can only be assessed in court, it knew how to do so. Defs.' Mot. at 32 (citing 28 U.S.C. § 3001(a)). So even the text alone refutes Plaintiff's claim that H-2A penalties can only be assessed in court.

Plaintiff also continues to press its ill-conceived argument that it should get a "trial de novo" under the APA because substantial-evidence review applies only to "agency hearing[s] provided by statute" and the agency hearing here was not provided by statute. Pl.'s Reply at 19. Defendants already refuted this argument, explaining that there are more categories for APA review than just substantial-evidence review of formal adjudication or a "trial de novo": agencies routinely undertake *informal* adjudications that are not mandated by statute and subject to the usual arbitrary-or-capricious standard. Defs.' Mot. at 32–33 & n.10. On this point, Defendants cited binding Supreme Court precedent, as well as numerous other cases explaining this distinction, all with no response from Plaintiff. *Compare id. with* Pl.'s

---

[12] Plaintiff's own cited article explains that "the history of what courts do" and "a volume of logic" is "on the side of administrative imposition" of civil penalties. Goldschmid, *supra*, at 936. As noted above, the 1972 article also rightly concluded that *de novo* review has "serious" negative consequences and that any "constitutional doubts" about administrative imposition of civil penalties "are based on vague and no longer plausible suppositions." *Id.*

20

Reply at 19. Sun Valley also fails to address how its case falls into either of the two extremely rare situations for a trial de novo. *Compare* Defs.' Mot. at 34–34 *with* Pl.'s Reply at 19. The reason is simple: there is no viable argument to the contrary. Plaintiff's claim for a trial de novo should be dismissed,[13] and the Court should decide this case on the administrative record under the arbitrary-or-capricious standard. Defs.' Mot. at 32–34; Compl. ¶¶ 136–42.

## IV.    The Department of Labor's imposition of back pay and penalties is fully supported by the record and is neither arbitrary nor capricious.

On the merits, the Labor Department's assessment of back wages and penalties was not arbitrary or capricious. Defendants previously explained how the agency "reasonably considered" every aspect of Sun Valley's H-2A violations and, across 76 pages of decisions, "reasonably explained" its assessment, rejecting many of the same arguments Sun Valley raises again here. *See* Defs.' Mot. at 34–39. Plaintiff's reply barely addresses these arguments, and instead spins Sun Valley's straightforward H-2A violations as further support for its constitutional claims. *See* Pl.'s Reply at 26–30 ("DOL's argument once again hammers home why this case should have been heard in the first instance in the Article III courts."). But setting aside Plaintiff's quibbles with APA review itself, Sun Valley provides no reason to vacate the award of the Labor Department's assessment here

As to back wages and penalties for Sun Valley's meal-related violations, there is no dispute that Sun Valley violated Labor Department regulations.[14] Instead, Plaintiff simply repeats its arguments that (1) the back pay award was an inappropriate "windfall" because workers suffered no harm from the violations, and (2) the penalties were inappropriate because the ALJ and Review Board examined the Administrator's imposition of penalties rather

---

[13] Plaintiff also raises the new claim, absent from its complaint, that the Labor Department's assessment can be vacated because "the agency adjudication was 'in excess of statutory . . . authority.'" Pl.'s Reply at 19 (quoting 5 U.S.C. § 706(2)(C)). Even if such a claim were asserted here, however, it would fail for the reasons discussed above.

[14] Plaintiff seemingly abandons its argument about beverage-related violations, relying only on its meal-plan-violation arguments. *See* Pl.'s Reply at 26–28. To the extent the beverage-related violations are still at issue, they should be upheld. Defs.' Mot. at 35–36.

21

than considering the issue anew.  Pl.'s Reply at 27–28.

On the back-wages award, "the undisclosed deductions" reduced "the workers' wages below the required wages (*i.e.* the wages specified in the job orders)."  Defs.' Mot. at 35 (quoting AR 4501).  That "necessarily provides 'harm' to both the workers' reliance on the H-2A program to ensure that their rights are protected, as well as the overall integrity of the program itself."  *Id.* (quoting AR 4502).  And the back-pay award "allows the workers to receive the wages that they were contractually promised."  *Id.* (quoting AR 4501–02).  That's not a "windfall"; it's a straightforward use of back pay to compensate employees for wages they "should have received but did not because of an employer's unlawful action."  Backpay, Black's Law Dictionary (11th ed. 2019).  Plaintiff's cited cases are inapposite.[15]

On the penalties, Plaintiff does not counter Defendants' argument that the ALJ and Review Board conducted their review in accord with Labor Department regulations and reasonably explained their decision to affirm the relevant penalties, thus satisfying the APA.  *Compare* Pl.'s Reply at 27 *with* Defs.' Mot. at 36–37.  Plaintiff's argument that the ALJ or Review Board must "independently weigh[] the regulatory factors for" imposing meal-plan-related penalties is also unavailing because the Secretary of Labor has ultimate authority for penalties and is not bound by the ALJ or the Review Board.  *See* 8 U.S.C. § 1188(g)(2); Secretary's Order 01-2020, 85 Fed. Reg. 13,186, 13,188 §§ 6(b)–(c) (Mar. 6, 2020).

---

[15] Plaintiff cites only two decades-old cases, neither of which are APA cases, concern the H-2A program, or bind this Court.  *See* Pl.'s Mot. at 35.  One case held that, under the Comprehensive Employment and Training Act of 1973, "a complainant who was properly discharged in a procedurally imperfect way" should not receive back pay because he is not "made whole by the payment of a year's wages for which he did not work."  *City of Ann Arbor v. U.S. Dep't of Lab.*, 733 F.2d 429, 432 (6th Cir. 1984) (citation omitted).  That bears no resemblance to this case, where the Labor Department reasonably explained that it awarded back wages to compensate the workers for "wages that they were contractually promised."  AR 4502.  The other case concerned Title VII and simply included a description of "back pay" in that context.  *See Richardson v. Tricom Pictures & Prods., Inc.*, 334 F. Supp. 2d 1303, 1310 (S.D. Fla. 2004), *aff'd*, 183 F. App'x 872 (11th Cir. 2006).

As to the Labor Department's reasonable explanation that Sun Valley improperly terminated 19 workers in May 2015, Plaintiff does not dispute that the Court must defer to the ALJ's credibility assessments and that it simply disagrees with those assessments here. *Compare* Defs.' Mot at 37–38 *with* Pl.'s Reply at 28. Instead, Sun Valley chastises Defendants for not citing "*any* portions of the transcript or the record that [ ] support the ALJ's finding that the workers were fired." Pl.'s Reply at 28. But, as Plaintiff acknowledges, Defendants already cited "the ALJ's determinations," which themselves cited the relevant portions of the record and explained why, "[c]onsidering the entirety of the evidence, [Sun Valley] terminated the nineteen workers that left in May 2015."[16] AR 4343; Defs.' Mot. at 37–38. Nothing requires Defendants to burden the Court with repetitive citations to survive APA review. *See NVE, Inc. v. HHS*, 436 F.3d 182, 189 (3d Cir. 2006) ("The APA explicitly directs a reviewing court to 'review the whole record or those parts of it cited by a party.'" (quoting 5 U.S.C. § 706)).

Finally, Sun Valley continues to press its Hail Mary argument that the Secretary's authority to "take such actions, including imposing appropriate penalties and seeking appropriate injunctive relief and specific performance of contractual obligations, as may be necessary" under the H-2A program, somehow does not include the ability to impose back wages. 8 U.S.C. § 1188(g)(2). Analyzing the plain statutory text with supporting case law, Defendants explained that nothing in this statutory provision forecloses retrospective relief like back wages. *Id.*; Defs.' Mot. at 38–39. So while Plaintiff claims that "Congress would have said" in the statute if it wanted to authorize retrospective damages, Congress did that: the statute specifically authorizes the Secretary to "take such actions" as necessary "to assure employer compliance with" the H-2A program. *Compare id. with* Pl.'s Reply at 29.

Sun Valley's only cited case does not change this straightforward conclusion. There, the Supreme Court rejected the FTC's ability to seek retrospective monetary relief where a statute said that "in proper cases the [FTC] may seek, and after proper proof, the court may

---

[16] The ALJ also found that, even assuming the employees were not outright fired, they were constructively discharged. AR 4343–45; AR 4506 n.107.

23

issue, a permanent injunction," which was "buried in a lengthy provision that focuses upon purely injunctive, not monetary, relief." *AMG Cap. Mgmt., LLC v. Fed. Trade Comm'n*, 141 S. Ct. 1341, 1348 (2021) (citing 15 U.S.C. § 53(b)). That provision is a far cry from the open-ended remedial authority for the Secretary here, especially because this statute references "penalties" that are definitionally retrospective. 8 U.S.C. § 1188(g)(2). Sun Valley gives no reason to contravene the statute's plain text and decades-long practice. *Davis v. United States*, 495 U.S. 472, 484 (1990) ("[W]e give an agency's interpretations and practices considerable weight where they involve the contemporaneous construction of a statute and where they have been in long use.")

## V.       The Labor Department did not violate the Excessive Fines Clause.

Plaintiff does not dispute that upholding the agency's award of penalties under the APA necessarily resolves its excessive-fines claim.[17] Compl. ¶¶ 129–34; Defs.' Mot. at 39–40; Pl.'s Mot. at 29–30. Rather, Sun Valley quibbles with Defendants' argument that the agency reasonably reduced Sun Valley's penalties far below the amount it *could have* imposed. Defs.' Mot. at 39–40. That is a relevant Excessive Fines Clause factor to be considered under Third Circuit law. But Plaintiff does not address this binding precedent, instead relying on out-of-circuit cases for the proposition that "fines well below relevant statutory maximums have been found to violate the Eighth Amendment." Pl.'s Reply at 30. Yet those cases either do not support Plaintiff's broad statement, do not concern the Excessive Fines Clause, or

---

[17] This also resolves Plaintiff's request for "a *de novo* trial on this Eighth Amendment issue." Pl.'s Reply at 30. As discussed above, the agency was properly empowered to impose penalties for H-2A violations. And Plaintiff gives no reason that this claim—which "calls for the application of a constitutional standard to the facts of a particular case"—cannot be resolved on the administrative record. *United States v. Bajakajian*, 524 U.S. 321, 336 n.10 (1998); *see, e.g.*, *Almaklani v. Trump*, 444 F. Supp. 3d 425, 434 (E.D.N.Y. 2020) (Going beyond the administrative record for constitutional claims "would be inappropriate and render meaningless the APA's restriction of judicial review to the administrative record.").

both.[18] *Cf. United States v. Chaplin's, Inc.*, 646 F.3d 846, 852 (11th Cir. 2011) (Forfeitures below "the maximum statutory fines . . . receive a 'strong presumption' of constitutionality.").

Of course, it makes little difference whether this factor is dispositive or not. Sun Valley is exactly within "the class of persons for whom the statute" and regulations were "principally designed" to punish: H-2A employers. *Bajakajian*, 524 U.S. at 338; *United States v. Cheeseman*, 600 F.3d 270, 284 (3d Cir. 2010). Its conduct was far from harmless. *Cheeseman*, 600 F.3d at 283; *see* Defs.' Mot. at 39. The penalties imposed were, under Plaintiff's own statistics, fully in line with penalties for other violations of the H-2A program. *Cheeseman*, 600 F.3d at 283; Defs.' Mot. at 39–40 (citing Compl. ¶ 30). And, as discussed above, the penalties were far below the "the legally permissible fine." *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 420–21 (3d Cir. 2000); *Cheeseman*, 600 F.3d at 283. So, under the circumstances and Third Circuit law, Plaintiff cannot bear its burden of establishing that the award is "grossly disproportionate" to the gravity of the offense. *Bajakajian*, 524 U.S. at 336.

## CONCLUSION

Plaintiff's partial-summary-judgment motion should be denied. Its claims should be dismissed and judgment should be entered for Defendants.

---

[18] *See New York v. United Parcel Serv.*, Inc., 942 F.3d 554, 599 (2d Cir. 2019) (deciding only "whether the district court abused its discretion in imposing cumulative penalties on UPS under" various statutes, not under the Excessive Fines Clause); *United States v. Fifty Nine Thousand Dollars ($59,000.00)*, 282 F. App'x 785, 788 (11th Cir. 2008) (expressly declining to "reach the excessive fines constitutional issue because the district court . . . did not follow the proper standard"); *United States v. 3814 NW Thurman St., Portland, Or.*, 164 F.3d 1191, 1197 (9th Cir. 1999) (finding an Eighth Amendment violation where, among other things, the $200,686.18 forfeiture was below the statutory maximum, but well above the then-binding Sentencing Guidelines); *compare U.S. ex rel. Smith v. Gilbert Realty Co.*, 840 F. Supp. 71, 75 (E.D. Mich. 1993) (applying an ad hoc analysis in a False Claims Act case and finding an Eighth Amendment violation) *with Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1315 (11th Cir. 2021) (finding no Eighth Amendment violation in a False Claims Act case because, among other things, the "imposed statutory penalties" were "lower than the potential maximum penalties under the FCA and other statutes") *and U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 387 (4th Cir. 2015) (finding no Eighth Amendment violation in a False Claims Act case, reiterating that "instances in which the penalty prescribed under the FCA is unconstitutionally excessive will be 'infrequent'").

DATED:  June 15, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRAD P. ROSENBERG
Assistant Director, Federal Programs Branch

/s/ *Stephen Ehrlich*
STEPHEN EHRLICH
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC  20005
Phone:  (202) 305-9803
Email:   stephen.ehrlich@usdoj.gov

*Attorneys for Defendants*

26