## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SUN VALLEY ORCHARDS, LLC, | : | |
| | : | Hon. Joseph H. Rodriguez |
| *Plaintiff*, | : | |
| | : | |
| v. | : | Civil No. 1:21-cv-16625 |
| | : | |
| U.S. DEPARTMENT OF LABOR, *et al.*, | : | |
| | : | **OPINION** |
| *Defendants*. | : | |
| | : | |

Plaintiff, Sun Valley Orchards, LLC ("Sun Valley"), moves for partial summary judgment to all claims that are susceptible to the decision based on the administrative record but not as to Sun Valley's additional claims seeking a *de novo* trial before the Court. The defendants, U.S. Department of Labor ("DOL"), move to dismiss and for summary judgment on all Sun Valley's claims.

Sun Valley is a New Jersey family farm owned and operated by Joe and Russell Marino. During the 2015 growing season, Sun Valley hired nineteen H-2A workers to harvest asparagus. The workers left the farm later that year and the Department of Labor investigated their departure and found several violations of the H-2A program requirements. Following adjudications against Sun Valley by the Administrative Law Judge and the Administrative Review Board, Sun Valley filed the instant action.

The Court has considered the written submissions of the parties and the arguments advanced at the hearing on April 20, 2023.  The record of that hearing is incorporated.

## I.    Background

### a.    The H-2A Visa Program

To appreciate the facts of this case, some legal background is necessary. The Immigration and Nationality Act of 1952 established the modern framework for regulation of immigration in the United States, including provisions for the admission of permanent and temporary foreign workers. *See* Immigration and Nationality Act of 1952 ("INA"), Pub.L. No. 82–414, 66 Stat. 163 (codified as amended at 8 U.S.C. §§ 1101 et seq.). One such provision was the H–2 visa program, which governed the recruitment of foreign workers for agricultural and non-agricultural jobs. 8 U.S.C. § 1101(a)(15)(H)(ii). In 1986, Congress enacted the Immigration Reform and Control Act of 1986 ("IRCA"), which amended the INA by, among other things, bifurcating the H–2 visa program into the H–2A and H–2B programs,[1] which govern the admission of agricultural and non-agricultural workers, respectively. *See* Pub.L. No. 99–603, § 301(a), 100 Stat. 3359, 3411 (amending 8 U.S.C. § 1101(a)(15)(H)(ii)(a)-(b)).

The Immigration and Nationality Act provides temporary work authorization for foreign agricultural workers under the H-2A program. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(a); § 1184(c)(1). The H-2A program permits employers to temporarily hire foreign workers upon certification that "(A) there are not sufficient workers who are able, willing, and qualified, and who will be available at the time and place needed, to perform the labor or services involved in the petitioner" and "(B) the employment of the

---

[1] The H-2A program is for agricultural workers, and the H-2B program is for non-agricultural workers.

alien in such labor or services will not adversely affect the wages and working conditions of workers in the United States similarly employed." 8 U.S.C. § 1188(a)(1)(A)–(B).

"Congress directed the Secretary of Labor ("Secretary") to promulgate regulations that would set the parameters of the program, particularly for temporary workers coming 'to perform agricultural labor or services.'" *Overdevest Nurseries, L.P. v. Walsh*, 2 F.4th 977, 980 (D.C. Cir. 2021) (quoting 8 U.S.C. § 1101(a)(15)(H)). Pursuant to this authority, the Secretary promulgated regulations[2] to protect American workers. Under these regulations, employers must first offer the job to workers in the United States. 20 C.F.R. § 655.121. Furthermore, the employer must offer domestic workers "no less than the same benefits, wages, and working conditions that the employer is offering, intends to offer, or will provide to H-2A workers." 20 C.F.R. § 655.122(a). Only if an American worker does not accept a position offered through this process can the employer submit an Application for Temporary Employment Certification (an "H-2A Application") to the Department of Labor ("DOL"). *See generally* 8 U.S.C. § 1188(a), (c)(3)(A).

Before submitting an Application for Temporary Employment Certification, an "employer must submit a completed job order." 20 C.F.R. § 655.121(a)(1). The job order lists the "[j]ob qualifications and requirements[,]" 20 C.F.R. § 655.122(b), and "[m]inimum benefits, wages, and working conditions[,]" 20 C.F.R. § 655.122(c). Once the DOL certifies an employer's petition, the employer can petition the Department of

---

[2] The H-2A visa is also governed by regulations issued by the Immigration and Naturalization Service. *See* 8 C.F.R. § 214.2(h). H-2A workers are only admitted into the United States to work for the designated employer and for the duration of the certified period of employment, which cannot exceed one year. If the employment relationship ends, whether the employee quits or the employer terminates the employment, the H-2A visa expires, and the workers must leave the United States. *See* 8 C.F.R. § 214.2(h)(5)(viii), (h)(11)(iii)(A)(1), & (h)(13).

Homeland Security to designate foreign workers as H-2A workers. *See Overdevest Nurseries*, 2 F.4th at 980.

### b.  The H2-A Enforcement System

The Secretary of Labor is "authorized to take such actions, including imposing appropriate penalties and seeking appropriate injunctive relief and specific performance of contractual obligations, as may be necessary to assure employer compliance with terms and conditions of employment" of the H-2A program. 8 U.S.C. § 1188(g) (2); 29 C.F.R. § 501.1. The Secretary of Labor may also initiate administrative proceedings as necessary, or alternatively may petition "any appropriate District Court of the United States" for injunctive relief, or "specific performance of contractual obligations." 29 C.F.R. § 501.16. The Department's Wage and Hour Division Administrator ("Administrator") investigates possible H-2A violations. If the Administrator determines violations occurred, it may recover back wages, debar the employer from receiving future H-2A labor certifications, and impose civil money penalties. 29 C.F.R. §§ 501.15, 501.16(a)(1), 501.19(a), 501.20(a). The Administrator may also impose civil monetary penalties for "each violation of the work contract, or the obligations imposed by 8 U.S.C. § 1188, 20 C.F.R. part 655." 29 C.F.R. § 501.19(a). "In determining the amount of penalty to be assessed for each violation, the Administrator shall consider the type of violation committed and other relevant factors." 29 C.F.R. § 501.19(b).

To institute administrative proceedings, the Administrator issues a written determination explaining the Wage and Hour Division's findings and imposes sanctions and remedies. 29 C.F.R. §§ 501.31, 501.32. An employer can request an administrative hearing before an Administrative Law Judge ("ALJ") to review the Administrator's

determination. 29 C.F.R. §§ 501.33(a), 501.34, 501.35. The Federal Rules of Civil

Procedure are generally applicable to litigation before the ALJ. In proceedings before

the United States Department of Labor, Office of Administrative Law Judges, "[t]he

Federal Rules of Civil Procedure (FRCP) apply in any situation not provided for or

controlled by these rules, or a governing statute, regulation, or executive order." 29

C.F.R. § 18.10(a). The ALJ will prepare a decision on the issues referred by the

Administrator. 29 C.F.R. § 501.41(a). Any party wishing review of the ALJ decision can

petition the Administrative Review Board ("ARB"). 29 C.F.R. § 501.42(a).

### c.  Sun Valley's H-2A Violations

During the 2015 growing season, Sun Valley hired nineteen H-2A workers to

harvest asparagus. In completing the H-2A paperwork, Sun Valley stated they would

provide the workers access to a kitchen on the premises of the farm when instead, the

workers' supervisor cooked out of the kitchen adjacent to the crew quarters and charged

the workers a flat rate of $75-$80 per week for food. The supervisor also sold beverages

to the workers.

The contract with the nineteen workers entitled them to forty hours of work per

week during the season, totaling 1,040 hours. However, if the workers left voluntarily or

were fired for cause, they were not entitled to those hours. Fired for cause included a

failure "to perform the work as specified," as well as failure "to meet applicable

production standard." *See* Dkt. 19-1 at 5 (quoting A.R. 1516).

Upon a dispute between the workers and Russel Marino in May 2015, the

workers left the farm. When the workers left Sun Valley, they had to complete

paperwork stating their reason for departure. The contractor, whom the Marinos hired

to assist them with the H-2A program, advised the workers would hamper Sun Valley's future employment opportunities if they stated they quit because they did not like the work. Instead, the contractor advised Sun Valley that the workers should state they left for personal reasons. Sun Valley then had the workers sign departure forms disclosing they resigned due to personal issues.

After an investigation in July 2015, the Administrator concluded Sun Valley violated various aspects of the H-2A program and assessed $369,703.22 in back wages and $212,250 in penalties. Sun Valley timely requested an ALJ hearing in July 2016, and Judge Theresa Timlin was assigned to the case, holding a four-day evidentiary hearing in July 2017. The Secretary of Labor ratified Judge Timlin's appointment "to address any claim that administrative proceedings pending before, or presided over by, administrative law judges of the U.S. Department of Labor violate the Appointments Clause." *See* Dkt. 22-1 at 6 (quoting Ltr. To Hon. Theresa C. Timlin (Dec. 21, 2017)).

Almost two years later after the appointment on October 28, 2019, Judge Timlin issued the decision, finding numerous H-2A violations and imposing $344,945.80 in back wages and $211,800 in penalties, a reduction of over $25,000 from the Administrator's assessment. Sun Valley then appealed to the ARB, which affirmed the ALJ decision.

Sun Valley argues the DOL's adjudication of these claims in agency courts, before agency judges, violated Article III; the DOL's award must be vacated because the ALJ was neither appointed nor subject to removal as required by the Constitution; the DOL's award is contrary to law and cannot be sustained based on the evidence in the

administrative record; and the DOL's award violates the Excessive Fines Clause.[3] The DOL argues the adjudication does not violate Article III; the ALJs do not violate the Appointments Clauses or the President's removal power; the adjudicatory system is authorized by the statute and Sun Valley is not entitled to a trial de novo; the imposition of back pay and penalties is fully supported by the record and is neither arbitrary nor capricious; and the DOL did not violate the Excessive Fines Clause.

## II.   Standard of Review

### a.   Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a claim based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. *Id.* In general, only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint are taken into consideration when deciding a motion to dismiss under Rule 12(b)(6). *See Chester County Intermediate Unit v. Pa. Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[3] Sun Valley states in addition to the claims presented in their motion for partial summary judgment, its complaint includes separate allegations seeking de novo review of the DOL's factual determinations after trial. Because Sun Valley cannot request summary judgment in its favor on those claims, they are not encompassed in the motion for partial summary judgment.

"A claim has facial plausibility[4] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." *Wyeth v. Ranbaxy Labs., Ltd.*, 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). *Accord Iqbal*, 556 U.S. at 678–80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). *See also Iqbal*, 556 U.S. at 678

---

[4] This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'''' *Id.*

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 556. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679.

### b. Federal Rule of Civil Procedure Rule 56

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, the Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ... admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

A fact is "material" only if it might impact the "outcome of the suit under the governing law." *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 261 (3d Cir. 2012). A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists,

the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[T]he party moving for summary judgment under Fed. R. Civ. P. 56(c) bears the burden of demonstrating the absence of any genuine issues of material fact." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden by producing evidence showing the absence of a genuine issue of material fact or by showing there is no evidence in support of the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.*; *Maidenbaum v. Bally's Park Place, Inc.*, 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). "A nonmoving party may not 'rest upon mere allegations, general denials or ... vague statements....'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex*, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible

evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

## III.   Analysis

### a.   The Department of Labor's Adjudication does not Violate Article III

"The judicial power of the United States, shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish." U.S. Const. art III, § 1. Congress cannot "confer the Government's 'judicial Power' on entities outside Article III." *Oil States Energy Servs., L.L.C. v. Greene's Energy Grp., L.L.C.*, 138 S. Ct. 1365, 1373 (2018) (quoting *Stern v. Marshall*, 564 U.S. 462, 484 (2011)).

"When determining whether a proceeding involves an exercise of Article III judicial power, this Court's precedents have distinguished between 'public rights' and 'private rights.'" *Oil States Energy Servs., L.L.C.*, 138 S. Ct. at 1373 (quoting *Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 32 (2014)). "Those precedents have given Congress significant latitude to assign adjudication of public rights to entities other than Article III courts." *Id.*

The Supreme Court has not "'definitively explained'[5] the distinction between public and private rights," *id.* (quoting *Northern Pipeline Constr. Co. v. Marathon*

---

[5] *Crowell v. Benson*, 285 U.S. 22 (1932), attempted to list some of the matters that fall within the public-rights doctrine: "Familiar illustrations of administrative agencies created for the determination of such matters are found in connection with the exercise of the congressional power as to interstate and foreign commerce, taxation, immigration, the public lands, public health, the facilities of the post office, pensions and payments to veterans." *Id.*, 285 U.S. at 51.

*Pipeline Co.*, 458 U.S. 50, 69 (1982)), and the Court's precedents "applying the public-rights doctrine have 'not been entirely consistent.'" *Id.* (quoting *Stern*, 564 U.S. at 488). However, precedents have recognized that the public-rights doctrine covers matters "which arise between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments." *Crowell*, 285 U.S. at 50.

The Supreme Court continues to limit the public-rights doctrine to "cases in which the claim at issue derives from a federal regulatory scheme, or in which resolution of the claim by an expert Government agency is deemed essential to a limited regulatory objective within the agency's authority." *Stern*, 564 U.S. at 490. Thus, the public-rights doctrine applies "when the right is integrally related to [a] particular Federal Government action." *Id.*

The public-rights doctrine applies to the DOL's case against Sun Valley for its H-2A violations because the H-2A involves immigration, which is a matter that falls within the doctrine. Under the Constitution, "control of the admission of aliens is committed exclusively to Congress, and … may lawfully impose appropriate obligations, sanction their enforcement by reasonable money penalties, and invest in administrative officials the power to impose and enforce them." *Lloyd Sabaudo Societa Anonima Per Azioni v. Elting*, 287 U.S. 329, 334 (1932). "Congress has often created new statutory obligations, provided for civil penalties for their violation, and committed exclusively to an administrative agency the function of deciding whether a violation has in fact occurred."

*Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 450 (1977).

Sun Valley argues this is a private right case because it involves "claims that historically were the subject action at common law, and because imposing over half a million dollars in liability on a family farm (on a breach-of-contract theory) is an inherently judicial matter." Dkt. 19-1 at 14. However, the enforcement action here is by the federal government based on Sun Valley's DOL's violations, which arise under the public-rights doctrine. *See Stern*, 564 U.S. at 489 (The public rights exception arises "between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments" and private rights involve "the liability of one individual to another under the law as defined."). Because this matter is based on Sun Valley's violations of DOL's regulations, derives from a federal regulatory scheme under the federal government's immigration related powers, and is integrally related to a particular Federal Government action, the enforcement action is adjudicated outside Article III. Thus, the DOL did not violate Article III and the claim is therefore dismissed.[6]

> ### b. The Department of Labor's Adjudicatory System is Authorized by Statute

---

[6] Additionally, "Article III's guarantee of an impartial and independent adjudication by the federal judiciary is subject to waiver." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 834 (1986). "[A] party may impliedly consent through his "actions rather than [his] words." *In re Trib. Media Co.*, 902 F.3d 384, 394 (3d Cir. 2018) (quoting *Roell v. Withrow*, 538 U.S. 580, 589-90 (2003)). Here, Sun Valley impliedly consented to a non-Article III adjudication based upon the continued litigation through the DOL for four years and never objected to the agency's non-Article III status.

Sun Valley argues "Congress has not authorized the Agency adjudication in this case." Dkt. 19-1 at 25. However, by the plain language of the statute:

> The Secretary of Labor is *authorized* to take such actions, including imposing appropriate penalties and seeking appropriate injunctive relief and specific performance of contractual obligations, as may be necessary to assure employer compliance with terms and conditions of employment under this section.

8 U.S.C. § 1188(g)(2). Per the statute, the Secretary could have just decided to impose such penalties. However, the Secretary may "prescribe regulations for the government of his department" and "the distribution and performance of its business." 5 U.S.C. § 301. Here, the Secretary prescribed regulations for the government of its department and the distribution and performance of its business by allowing H-2A violators to challenge these assessments through an adjudicatory process where ALJs can consider testimony and evidence. If a party is dissatisfied with the ALJ's decision, they then may petition the ARB to review the decision. 29 C.F.R. § 501.42.

Based on the clear language of the statute, Congress authorized the DOL to adjudicate

civil monetary penalties or back pay in administrative proceedings.

### c. Sun Valley Bore the Responsibility to Develop Issues for the Adjudicator's Consideration

"Administrative review schemes commonly require parties to give the agency an opportunity to address an issue before seeking judicial review of that question." *Carr v. Saul*, 141 S. Ct. 1352, 1358 (2021). "Where statutes and regulations are silent, however, courts decide whether to require issue exhaustion based on 'an analogy to the rule that appellate courts will not consider arguments not raised before trial courts." *Id.* (quoting *Sims v. Apfel*, 530 U.S. 103, 108-09 (2000)). When determining to impose an issue

exhaustion requirement, the court "depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding." *Id*. at 1358 (quoting *Sims*, 530 U.S. at 109). Issue exhaustion is at its greatest where the parties are expected to develop the issues in an adversarial administrative proceeding. *Sims*, 530 U.S at 110.

The ALJ does not look into its own issues. The DOL's H-2A enforcement proceedings require "formal adversarial adjudications." 29 C.F.R. § 18.101. "Any person desiring review of a determination referred to in § 501.32, including judicial review, shall make a written request for an administrative hearing.…" 29 C.F.R. § 501.33(a). The request must "[s]tate the specific reason or reasons the person requesting the hearing believes such determination is in error[.]" 29 C.F.R. § 501.33(b)(3). Additionally, within the prehearing statement, it must state "[t]he issues of law to be determined with reference to the appropriate statute, regulation, or case law[.]" 29 C.F.R. §18.80(c)(2).

Because issue exhaustion was required and Sun Valley bore the responsibility to develop issues for the adjudicator's consideration and failed to raise its Appointments Clause and Removal Power objections in the agency proceedings, the claims are deemed forfeited and are hereby dismissed.

### d.  The Administrative Law Judge did not Violate the Appointments Clause

Despite, Sun Valley's procedural missteps. Sun Valley argues the DOL's award must be vacated because the ALJ was not constitutionally appointed. *See* Dkt. 19-1 at 28. However, "ratification can remedy a defect arising from the decision of 'an improperly appointed official … when.… a properly appointed official has the power to conduct an

independent evaluation of the merits and does so.'" *Wilkes-Barre Hosp. Co. v. Nat'l Lab. Rels. Bd.*, 857 F.3d 364, 371 (D.C. Cir. 2017). There are three general requirements for ratification: (1) "the ratifier must, at the time of ratification, still have the authority to take the action to be ratified[,]" (2) "the ratifier must have full knowledge of the decision to be ratified[,]" and (3) "the ratifier must make a detached and considered affirmation of the earlier decision." *Advanced Disposal Servs. E., Inc. v. N.L.R.B.*, 820 F.3d 592, 602 (3d Cir. 2016). Evidence of a detached and considered judgment can be "implied from subsequent conduct, [], such when a later act is necessarily an affirmation on an earlier act." *Id.* at 603. Ratification may be done by a properly appointed superior official or a properly appointed official is capable of ratifying their own decisions. *Id.* at 605. In determining whether ratification has occurred, agency officials are owed "proper deference" under the "presumption of regularity." *Id.*

Here, Judge Timlin's appointment was ratified by the head of her department, the Secretary of Labor, after she held the hearing, but nearly two years before she decided Sun Valley's case. Upon her appointment, Judge Timlin then ratified all prior proceedings. The knowledge requirement is easily satisfied since Judge Timlin presided over Sun Valley's case and the four-day hearing. The detached and considered affirmation of all earlier decisions is also satisfied since Judge Timlin did not decide anything of substance for nearly two years after the Secretary ratified her appointment. Additionally, Judge Timlin's later decision was an affirmation of the validity of her earlier actions in conducting the case. Because Judge Timlin was a properly appointed

inferior officer when she decided Sun Valley's case, there was no Appointment Clause Violation.[7]

### e. The Administrative Law Judge did not Enjoy Impermissible Protections Against Removal

Sun Valley claims "[t]he ALJ who adjudicated Sun Valley's case [] was not subject to effective control by the President through the removal power." Dkt. 19-1 at 30. Article II provides "[t]he executive Power shall be vested in a President of the United States of America[,]" and "he shall take Care that the Laws be faithfully executed[.]" U.S. Const. art. II § 1; *id.* at § 3. "The entire 'executive Power' belongs to the President alone." *Seila L. L.L.C. v. CFPB*, 140 S. Ct. 2183, 2197 (2020). However, lesser executive officers will assist and "remain accountable to the President, whose authority they wield." *Id.* The President's authority includes "the ability to remove executive officials, for it is 'only the authority that can remove' such officials...." *Id.* (quoting *Bowsher v. Synar*, 478 U.S. 714, 726 (1986)).

As inferior officers, the DOL's ALJs are appointed by the Secretary of Labor, the Head of their Department. Such power of appointment of executive officers comes with it "necessary incident of removal." *Myers v. United States*, 272 U.S. 52, 126-27 (1926). In *Humphrey's Executor v. United States,* the Supreme Court held that Congress can, under certain circumstances, create independent agencies run by principal officers appointed by the President, whom the President may not remove at will but only for good cause. *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). Likewise,

---

[7] Because Sun Valley does not allege its previous claim in its complaint that the ALJs who make up the Review Board violate the Appointments Clause because they qualify as principal officers of the United States insofar as their decisions are final decisions of the Labor Department and are not subject to review by a superior executive officer, the Court deems the alleged claim from Sun Valley's complaint abandoned.

in *United States v. Perkins,* 116 U.S. 483 (1886), and *Morrison v. Olson,* 487 U.S. 654 (1988), the Court sustained similar restrictions on the power of principal executive officers, themselves responsible to the President, to remove their own inferiors. Congress has the power to limit and regulate removal of such inferior officers in the heads of departments. *Perkins*, 116 U. S. at 485.

The Supreme Court has upheld limited restrictions on the President's removal power where "only one level of protected tenure separated the President from an officer exercising executive power." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 495, (2010). When there is only one level of protected tenure separating the President from an officer, there is no removal problem because "[i]t [is] the President— or a subordinate he [can] remove at will—who decide[s] whether the officer's conduct merit[s] removal under the good-cause standard." *Id.*

Despite the Merit Systems Protection Board (the "Board") determining whether there is removal for "good cause," the action is taken by the agency which the administrative law judge is employed. 5 U.S.C. § 7521(a). The Board is simply there to make sure the agency properly invoked "good cause" for removal. Because ALJs may be removed by the Secretary of Labor for "good cause," there is no removal problem. *See id.* There is only one level of protected tenure separating the President from an officer since the Secretary of Labor is removable by the President.

Further, there is no removal problem when the Secretary of Labor does not need to use ALJs at all. Thus, "[t]he President has broad executive power to order the Secretary of Labor to change DOL's regulatory scheme and remove ALJs from the adjudicatory process under 30 U.S.C. § 932a." *Decker Coal Co. v. Pehringer*, 8 F.4th

18

1123, 1134 (9th Cir. 2021). For the above reasons, Sun Valley's removal-power claim is hereby dismissed.

### f. The Department of Labor's Imposition of Back Pay and Penalties was Neither Arbitrary nor Capricious

Sun Valley makes two arguments regarding the agency's award for the meal plan and beverage issues: (1) the ALJ and ARB did not adequately justify its imposition of monetary penalties, and (2) the DOL's award of back wages is not supported by substantial evidence. "Judicial review under [the arbitrary-and-capricious standard] is deferential, and a court may not substitute its own policy judgment for that of the agency." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). "A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Id.*

First addressing the imposition of monetary damages. "In determining the amount of penalty to be assessed for each violation, the WHD Administrator shall consider the type of violation committed and other relevant factors." 29 C.F.R. § 501.19(b). "The decision [of the ALJ] shall [] include an appropriate order which may affirm, deny, reverse, or modify, in whole or in part, the determination of the WHD Administrator." 29 C.F.R. § 501.41(b). Further, the ALJ must state the reason or reasons for such order. *Id.*

Sun Valley complains that Judge Timlin deferred to the enforcement personnel instead of conducting a de novo review of the Administrator's determination. Dkt. 19-1 at 33. However, the ALJ only had to affirm, deny, reverse, or modify the determination of the WHD Administrator and state the reasons for such order. Such requirements

were met by the ALJ when she affirmed the Administrator's assessment of penalties for meal and beverage violations and stated the reason for such order is to "deter other H-2A employers from making the same failure to disclose in a potentially exploitative way." *See* AR 4500-02.

Insofar as the regulatory factors considered by the WHD Administrator, the Administrator assessed one penalty for Sun Valley's combined meal and drink violations in the amount of $1,350 for each of Sun Valley's 147 workers, where instead, the Administrator had the discretion to assess the meal and drink penalties separately. Judge Timlin found the Administrator applied the factors appropriately and assessed the penalty in this way due to the seriousness of the violation and great impact on workers.

Secondly, addressing the award of back wages. "The employer must make all deductions from the worker's paycheck required by law. The job offer must specify all deductions not required by law which the employer will take from the worker's paycheck." 20 C.F.R. § 655.122(p)(1). "A deduction that is primarily for the benefit or convenience of the employer will not be recognized as reasonable and therefore the cost of such an item may not be included in computing wages." 20 C.F.R. § 655.122(p)(2).

In this matter, Sun Valley deducted meal-plan and beverages charges from the workers' pay without prior disclosure in the job order. The undisclosed deductions from the meal-plan charges reduced the workers' wages below the required wages specified in the job order. Further, the meal-plan changed a material term of the job order, which harmed both the workers' reliance on the H-2A program to ensure the protection of workers' rights and the overall integrity of the H-2A program. It is evident Sun Valley profited from the sales of the meal-plan and beverages charges. Such profits are clearly

prohibited in the H-2A regulations noted above. Thus, the award of back wages due to the unlawful deductions are not improper because it makes the workers' whole in compensation.

The ALJ reasonably considered the relevant issues of Sun Valley's H-2A violations and reasonably explained the imposition of back wages and penalties. Thus, such imposition of back wages and penalties in regard to Sun Valley's H-2A violations are neither arbitrary nor capricious.

### g. Sun Valley Improperly Terminated Nineteen Workers

"The employer must guarantee to offer the worker employment for a total number of work hours equal to at least three-fourths of the workdays of the total period…and ending on the expiration date specified in the work contract…." 20 C.F.R. § 655.122(i)(1). The employer is not responsible for paying the three-fourths guaranteed if a "worker voluntarily abandons employment before the end of the contract period, or is terminated for cause…." 20 C.F.R. § 655.122(n).

Sun Valley argues the agency's award for early termination is not supported by substantial evidence. *See* Dkt. 19-1 at 36. The ALJ and ARB affirmed that Sun Valley improperly fired nineteen workers after the May 2015 altercation. Judge Timlin relied on testimony of various workers to determine they were fired. When evaluating the witnesses' credibility, Judge Timlin found that "the [worker] witnesses were consistent in describing the heated events at the meeting while Joseph Marino was unable to remember specifically what was said." Dkt. 22-1 at 38; *see* AR 4343. Upon appeal, the ARB reviewed Judge Timlin's cited evidence and properly deferred to the credibility determinations, affirming the ALJ's ruling.

"[T]he ALJ must necessarily make certain credibility determinations, and this Court defers to the ALJ's assessment of credibility." *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014); *see Diaz v. Comm'r,* 577 F.3d 500, 506 (3d Cir.2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence [and] assessment of the credibility of witnesses...."). However, the ALJ must specifically identify and explain what evidence it found not credible and why it found it not credible. *Adorno v. Shalala,* 40 F.3d 43, 48 (3d Cir.1994) (citing *Stewart v. Sec'y of Health, Education and Welfare,* 714 F.2d 287, 290 (3d Cir.1983)); *see also Stout v. Comm'r,* 454 F.3d 1050, 1054 (9th Cir.2006) (stating that an ALJ is required to provide "specific reasons for rejecting lay testimony"). An ALJ cannot reject evidence for an incorrect or unsupported reason. *Ray v. Astrue,* 649 F.Supp.2d 391, 402 (E.D.Pa.2009) (quoting *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir.1993).

Because the Court owes deference to the ALJ's evaluation of the evidence and assessment of the credibility of witnesses, the Court agrees with Judge Timlin's determination. Based on the workers' testimony and explanation for why the ALJ found the workers' testimony credible, the ARB reasonably affirmed that Sun Valley Improperly terminated nineteen workers in May 2015.

### h.  The Department of Labor is Authorized to Assess Back Wages

Sun Valley argues the "Agency's entire award of back pay (for all the various violations) must be vacated because the statute does not authorize back pay." Dkt. 19-1 at 38. "The Secretary of Labor is authorized to take such actions, including imposing appropriate penalties and seeking appropriate injunctive relief and specific performance

of contractual obligations, as may be necessary to assure employer compliance with terms and conditions of employment...." 8 U.S.C. § 1188(g)(2).

Nothing in the statute prevents the agency from awarding back wages. The statute merely includes a list of some actions the Secretary of Labor is authorized to take. *See generally* INCLUDE, Black's Law Dictionary (11th ed. 2019) ("The participle *including* typically indicates a partial list."). Additionally, when 8 U.S.C. § 1188 has been violated, actions including "the recovery of unpaid wages" may be taken. 29 C.F.R. § 501.16(a)(1).

### i. The Labor Department did not Violate the Excessive Fines Clause

Sun Valley argues the "Agency's award for the meal plan and beverages violations also violates the Eighth Amendment's Excessive Fines Clause." Dkt. 19-1 at 39. The Eighth Amendment provides that: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment is applicable if the forfeiture constitutes a "fine" and is violated only if that fine is "excessive." *See Tillman v. Lebanon Cnty. Corr. Facility,* 221 F.3d 410, 420 (3d Cir. 2000). In *Bajakajian,* the Supreme Court held that the forfeiture of a sum of money grossly disproportionate to the defendant's offense constituted an Excessive Fines Clause violation and was therefore, unconstitutional. *United States v. Bajakajian*, 524 U.S. 321, 337 (1998).

The DOL's award of penalties was not grossly disproportional to Sun Valley's meal plan and beverages violations. Sun Valley's violations harmed the workers' reliance and overall integrity of the H-2A program. Instead of imposing separate penalties for each of the meal and drink violations, the DOL only imposed one penalty of $1,350 per

worker for Sun Valley's combined violations. The DOL also applied a ten percent reduction to the penalties due to Sun Valley not having a prior history with the H-2A program. Such reduction and imposition of one penalty is not grossly disproportionate to Sun Valley's offenses when the sum is less than legally permissible. *See Tillman*, 221 F.3d at 420-21.

Additionally, a reviewing court should evaluate "the sentences imposed for commission of the same crime in other jurisdictions." *United States v. Cheeseman*, 600 F.3d 270, 284 (3d Cir. 2010). "From 2005 through August 2021, the DOL [] imposed three civil monetary penalties over $1 million; fifty-two penalties between $100,000 and $1 million; 482 penalties between $10,000 and $100,000; and 1,850 penalties under $10,000 for alleged violations of the H-2A program." Dkt. 19-1 at 3. Thus, there is nothing out of the ordinary about Sun Valley's $198,450 penalties, and Sun Valley's Excessive Fine claim is dismissed.

## IV.    Conclusion

For the reasons stated above Defendants' Motion to Dismiss [Dkt. 22-1] is granted without prejudice, and Plaintiff's Motion for Partial Summary Judgment [Dkt. 19-1] and Defendant's Cross-Motion for Summary Judgment [Dkt. 22-1] are denied as moot.

An appropriate Order shall issue.


Dated: July 27, 2023

                                        s/ Joseph H. Rodriguez
                                        Hon. Joseph H. Rodriguez,
                                        UNITED STATES DISTRICT JUDGE